**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
**LAURA GANZERO, RACHELLE**               **INDEX NO: 07-CV-5940 (DAB)**
**HEMMING, and MARCIA JOHSNON on**
**behalf of themselves and others similarly**
**situated,**



               **Plaintiff,**


     **v.**


**BENSUSAN RESTAURANT CORP., d/b/a**
**BLUE NOTE, STEVE BENSUSAN, and**
**DANNY BENSUSAN,**



              **Defendants.**
-------------------------------------------------------x


### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................1

    A. Plaintiffs' Allegations ...................................................................................2

    B. Defendants' Assertions .................................................................................3

    C. Discovery .....................................................................................................3

    D. Negotiations .................................................................................................3

    E. Settlement Terms ..........................................................................................4

    F. Factors Considered in the Settlement of the Claims.....................................4

    G. Class Members' Response to Settlement ......................................................5

III.    ARGUMENT .........................................................................................................5

    A. The Proposed Settlement Should Be Approved............................................5

        i. The Proposed Settlement Class Satisfies the
           Requirements of Rule 23 ........................................................................6

            a. Plaintiffs Have Met All of the
               Prerequisites Under Rule 23(a)........................................................6

                1) Numerosity is Satisfied...........................................................6

                2) Commonality is Satisfied........................................................6

                3) Typicality is Satisfied .............................................................7

                4) Adequacy is Satisfied .............................................................7

    B. The Court Should Certify the Settlement
       Class Under Rule 23(b)(3).............................................................................8

        i. The Proposed Settlement is Fair, Reasonable, and
           Adequate and Should Be Approved.........................................................8

            a. Procedural Fairness ..........................................................................8

b. Substantive Fairness...............................................................9

    1) The Complexity, Expense, and Likely
       Duration of the Litigation ......................................10

    2) The Reaction of the Class to
       The Settlement ......................................................10

    3) The Stage of Proceedings and the
       Amount of Discovery Completed .........................11

    4) The Risks of Establishing Liability ......................11

    5) The Risks of Establishing Damages ....................12

    6) The Risks of Maintaining the Class
       Action Through the Trial .......................................12

    7) The Ability of Defendants to Withstand
       A Greater Judgment ..............................................13

    8) The Range of Reasonableness of the
       Settlement Fund in Light of the Best
       Possible Recovery and the Attendant
       Risks of Litigation ................................................13

ii. The Notice to Class Members Meets the Requirements
    Of Rule 23 ........................................................................14

iii. Incentive Payments Should Be Awarded to the Named
    Class Representatives and One Additional Class Member .............15

iv. Class Counsel's Attorneys' Fees Should Be Approved ...................17

    a. Class Counsel's Requested Fee Award is Reasonable..........................18

    b. The *Goldberger* Factors......................................................................20

       1) Counsel's Time and Labor ....................................20

       2) The Litigation's Magnitude and Complexity ........21

       3) The Risks of Litigation.........................................21

       4) Quality of the Representation...............................22

5)  The Fee is Reasonable in Relation
To the Settlement ....................................................23

6)  Public Policy Considerations.................................23

IV.  CONCLUSION..........................................................................................................24

## I.    <u>INTRODUCTION</u>

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Laura Ganzero, Rachelle Hemming, and Marcia Johnson ("Plaintiffs") apply to this Court for final approval of a proposed settlement in this wage and hour class action.  This action was brought on behalf of servers employed by Bensusan Restaurant Corporation, d/b/a Blue Note Jazz Club; Steve Bensusan; and Danny Bensusan ("Defendants").  This settlement will resolve all claims brought before this Court in this action pursuant to the proposed compromise set forth in the Settlement Agreement and Release ("Agreement" or "Settlement Agreement").[1]  The Settlement Class consists of individuals employed by Defendants as servers at Blue Note Jazz Club ("Blue Note") at any time between June 22, 2001 and October 29, 2008.

On October 29, 2008, the Court preliminarily approved the proposed settlement as being fair, just, reasonable, and in the best interests of the Settlement Class.  In so approving, the Court preliminarily certified the Settlement Class and found that for purposes of the settlement the State Settlement Class met the requirements for class certification under the Federal Rules of Civil Procedure.  The Court also found that the Settlement Notice proposed in the Agreement constituted valid, due, and sufficient notice to Class Members.

Pursuant to the October 29, 2008 Court Order, Class Counsel mailed and distributed the Settlement Notice.  Kirschenbaum Decl. ¶ 6.  Class members had sixty (60) days after the mailing of Notice to opt-out of the state claim class action and object to the terms of the Settlement Agreement.

## II.    <u>BACKGROUND</u>

Laura Ganzero filed this Wage Action on June 22, 2007, on behalf of herself and others similarly situated alleging wage and hour violations under the Fair Labor Standards Act

---

[1] The Settlement Agreement is attached hereto as Exhibit A.

1

("FLSA") and New York Labor Law.  On July 10, 2007, Ms. Ganzero and the other Plaintiffs

filed an Amended Complaint.

### A.  Plaintiffs' Allegations

The Wage Action alleges that Defendants violated the FLSA, 29 U.S.C. §§ 201, *et seq.*,

and New York Labor Law §§ 191, 193, 196-d, 198-b, 650, *et seq.*, 652, 663, and relevant

sections of N.Y. Comp. Codes R. & Regs.  The lawsuit asserts six claims for relief: (1) failure to

pay minimum wage and keep appropriate records under the FLSA; (2) failure to pay overtime

under the FLSA; (3) failure to pay minimum wage under the New York State Minimum Wage

Act ("NYSMWA"); (4) failure to pay overtime under the NYSMWA; (5) illegal deductions from

gratuities under the New York Labor Law; and (6) failure to pay New York's "spread of hours"

premium, which consists of one hour's pay at New York's minimum wage for each day that an

employee works in excess of ten (10) hours.

Plaintiffs contend that Defendants failed to pay them the New York food service worker

minimum wage for much of the time period in question and failed to provide overtime

compensation of one and one half times their regular rate for hours worked over forty (40) in a

week.  N.Y. Comp. Codes R. & Regs. tit. 12, §§ 137-1.2, 137-1.3, 137-1.5.  Plaintiffs also assert

that Defendants made illegal deductions from their pay to cover losses incurred by Defendants as

a result of walk-outs, i.e., patrons who left Blue Note without paying their bills, and broken

cutlery and/or goods, in violation of New York Labor Law §§ 193, 196-d.  Finally, Plaintiffs

claim that Defendants failed to pay them a spread of hours premium of one hour's pay at the

minimum wage for days they worked more than ten (10) hours.  N.Y. Comp. Codes R. & Regs.

tit. 12, § 137-3.11.

The Complaint seeks Class relief, including the difference between Class Members' actual wages and the minimum wage, unpaid spread of hours, and overtime compensation. In addition, the Complaint seeks liquidated damages under the FLSA and interest and all costs and attorneys' fees incurred in the prosecution of this Litigation.

### B. **Defendants' Assertions**

Defendants have consistently denied all claims in Plaintiffs' complaint. Defendants maintain that it was not their standard practice to charge servers for walkouts, and if that practice did occur, it was highly out of the ordinary and in violation of the restaurant's policy. Defendants have also produced documentary evidence to show that they paid the correct minimum wage for most of the time in question and did not routinely take improper deductions.

### C. **Discovery**

After the filing of this lawsuit, Defendants produced to Plaintiffs complete payroll records of all payments to all Class Members throughout the liability period. These records showed that the Class's "best case scenario" damages for minimum wage, overtime, and spread of hours violations totaled roughly $48,000.00. Kirschenbaum Decl. ¶ 4.

In addition, Class Counsel investigated Plaintiffs' allegations regarding illegal deductions. This research revealed that the damages, if any, attributable to illegal deductions were extremely small as compared with the minimum wage damages.

### D. **Negotiations**

Counsel for the Parties engaged in negotiations both in person and by telephone in order to arrive at the Settlement Agreement. *Id*. ¶ 5. Class Counsel made it clear that Plaintiffs were intent on vigorously pursuing this matter and recovering *all* damages owed to them. In addition, Class Counsel reminded Defendants that they would be entitled to their full attorneys' fees if the

Class won after trial.  Because of this, the Parties ultimately settled at an amount greater than the actual damages established by Defendants' documents.

### E.  Settlement Terms

The Settlement Agreement provides that Defendants shall pay a total Gross Value Fund ("GVF") of sixty four thousand dollars ($64,000.00).  The GVF includes attorneys' fees, costs, taxes, and any incentive awards.  Based on Class Counsel's analysis of the evidence produced by Defendants, each Qualifying Class Member will receive, *after* attorneys' fees, over 80% of what his or her recovery would have been had Plaintiffs prevailed on all claims in this Lawsuit.

After the payment of attorneys' fees and costs and small individual enhancements to four Plaintiffs,[2] the Net Fund Value ("NFV") shall be distributed among Class Members who submit a Claim Form on a pro-rata basis determined based on his or her employment tenure with Defendants during the Recovery Period.  Defendants will withhold applicable payroll taxes from these payments.

### F.  Factors Considered In The Settlement Of The Claims

The Plaintiffs weighed the weaknesses and complexities in their case against the benefit of receiving a large percentage of the damages sought without the inherent risks of litigation.  At all times throughout the Wage Action, Defendants continued to deny any liability or wrongdoing of any kind associated with Plaintiffs' claims.

Plaintiffs have thoroughly analyzed Defendants' factual and legal defenses, reviewed the defenses with the Plaintiffs, and assessed the strength of Defendants' arguments.  Plaintiffs

---

[2] As discussed below, Class Counsel have agreed to reduce their attorneys' fees in order to supplement Class Members' awards so that no member receives less than $15.00.  In total, Class Counsel seek $21,306.00, or 33.3% of the GVF.  Class Counsel will pay all costs associated with the action from their contingent fee.  The Agreement provides for individual enhancement awards to the three named Plaintiffs and Lee Ann Walton totaling $4,000.00.

examined the documents produced by Defendants to determine the value of their claims and ultimately negotiated a settlement that exceeded that amount.

Additionally, in considering the possibility of settlement, Plaintiffs and Class Counsel accounted for the time, delay, and costs of further discovery motion practice, liability trial(s), damages trial(s), and appeal(s). Both Parties also took into account that if Plaintiffs prevailed at trial, Defendants would be liable for their attorneys' fees.

### G. Class Members' Response To Settlement

The response to the settlement has been extremely positive. Counsel sent out 86 notices, and no Class Member has opted out of the action or objected to the settlement. Kirschenbaum Decl. ¶ 7. Accordingly, there was clear approval of the settlement.

### III. ARGUMENT

### A. The Proposed Settlement Should Be Approved

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis: "The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." *See also D'Amato v. Watman*, 236 F.3d 78, 85 (2d Cir. 2001).

Approval of a class action settlement is within the Court's discretion, "which should be exercised in light of the general judicial policy favoring settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation omitted). The Second Circuit has stated that "[t]he Court must eschew any rubber stamp approval in favor of an independent evaluation, yet, at the same time, it must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (1974).

i.  **The Proposed Settlement Class Satisfies the Requirements of Rule 23**

Prior to granting final approval of a settlement, a district court determines whether a proposed settlement class meets the requirements of Rule 23 and should be certified. *In re Telik, Inc. Sec. Litig*, 576 F. Supp. 2d at 581-82. Under Rule 23, a class may be certified if there is (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy, and where one of the Rule 23(b) requirements is met.[3] *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 2007, at *8 (S.D.N.Y. Jan. 31, 2007). Here, the proposed class meets the numerosity, commonality, typicality, and adequacy standards, as well as Rule 23(b)(3)'s requirement that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

a.  **Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)**

1)  **Numerosity Is Satisfied**

Numerosity is presumed satisfied where there are at least forty class members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). The Class in this case includes more than fifty (50) people. Therefore, the Class is so numerous that joinder of all Class members is impracticable.

2)  **Commonality Is Satisfied**

"The commonality requirement will be met if the named plaintiffs share a common question of law or fact with the grievances of the prospective class." *Daniels v. City of New York*, 198 F.R.D. 409, 417 (S.D.N.Y. 2001). Here, the claims of Plaintiffs and the Class all

---

[3] Rule 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

revolve around the same questions of law and fact regarding whether they were paid the minimum wage and properly compensated for overtime. Since Plaintiffs challenge common practices and procedures at Blue Note to which they allege all Class Members were subject, the commonality requirement is easily satisfied.

### 3)  Typicality Is Satisfied

The typicality requirement is satisfied here because the Class Representatives' claims "arise from the same practice or course of conduct that gives rise to the claims of the proposed class members." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *10. Moreover, the claims of the Class Representatives and the proposed Class Members rely on "similar legal arguments" that Defendants failed to properly compensate them. *Robinson v. Metro N. Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001).

### 4)  Adequacy Is Satisfied

Adequacy is satisfied where "1) Plaintiff's interests are [not] antagonistic to the interests of other members of the class and 2) Plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000).

Here, Plaintiffs are adequate representatives of the proposed class and have fairly and adequately represented and protected the interests of all Settlement Class Members in achieving this settlement. The Class Representatives have no known conflicts with any Settlement Class Members. *Id.*

In addition, Class Counsel in this case are highly experienced in complex wage and hour litigation. Kirschenbaum Decl. ¶¶ 9-18. Class Counsel conducted a thorough pre-filing and continuing investigation, vigorously prosecuted the lawsuit, and negotiated a settlement that

provides prompt and valuable relief to Class Members. Accordingly, the Class Representatives and Class Counsel meet the adequacy requirement of Rule 23.

### B. The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, Plaintiffs have satisfied the predominance and superiority requirements of Rule 23(b)(3). The above-described common questions of law and fact predominate over any individual issues such as the nature and extent of damages. *See Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001).

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is impracticable. Moreover, as damages suffered by individual members of the Settlement Class are relatively small compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class Members to individually redress the harm done to them. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 183-84 (W.D.N.Y. 2005); *Taft*, 2007 U.S. Dist. LEXIS 9144, at *12; *Ansoumana*, 201 F.R.D. at 89.

### i. The Proposed Settlement Is Fair, Reasonable, And Adequate And Should Be Approved

In deciding whether to approve a settlement, courts consider the fairness of the settlement by looking at the negotiating process that lead to the settlement and the substantive terms of the settlement. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Since this settlement was negotiated prior to class certification, "it is subject to a higher degree of scrutiny in assessing its fairness." *D'Amato*, 236 F.3d at 85.

### a. Procedural Fairness

A presumption of fairness arises where a class action settlement was "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-*

*Mart Stores, Inc.*, 396 F.3d at 116 (internal quotation omitted).  Relevant factors include "[t]he experience of counsel, the vigor with which the case was prosecuted, and the coercion or collusion that may have marred the negotiations themselves[.]"  *Hicks v. Morgan Stanley & Co.*, No. 01-Civ-10071, 2005 U.S. Dist. LEXIS 24890, at *13 (S.D.N.Y. Oct. 19, 2005) (internal quotation omitted).

Here, Class Counsel are experienced attorneys who have served as lead counsel on numerous local and national class and collective actions under the FLSA and state wage and hour laws.  Class Counsel have brought numerous New York class actions in which they obtained significant monetary awards for class members.  *See, e.g.*, *Agofonova v. Nobu Corp.*, No. 07-Civ-6926 (S.D.N.Y. Feb. 6, 2009) (order granting final approval of settlement and certification of settlement class in wage and hour class action).  In light of these facts, and the fact that the settlement was reached through arm's-length negotiations, the settlement is entitled to a presumption of fairness and adequacy.

### b.  Substantive Fairness

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the factors set forth in *City of Detroit v. Grinnell Corp.*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 117.  These factors ought not be applied in a formulaic manner.  Rather, "[t]he evaluation of a proposed settlement

requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell Corp.*, 495 F.2d at 468 (citing *Saylor v. Lindsley*, 456 F.2d 896, 904 (2d Cir. 1972)).

### 1) The Complexity, Expense, And Likely Duration Of The Litigation

To assess the substantive fairness of a settlement, courts weigh the benefits of a potential settlement against the time and expense of continued litigation. *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 361-62 (S.D.N.Y. 2002). "[M]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Frank*, 228 F.R.D. at 184-85 (internal quotation omitted). If this case continues, there will be significant costs that will deplete any recovery, including numerous depositions, extensive document production and review, trial, and possible appeals. Moreover, there is likely to be significant motion practice. For example, Plaintiffs will move for class certification, which Defendants may oppose. The parties will also presumably move for summary judgment to narrow the issues. This will result in significant costs and delay in the resolution of this case. *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05-Civ-3452, 2008 U.S. Dist. LEXIS 23006, at *10 (S.D.N.Y. Mar. 24, 2008).

### 2) The Reaction Of The Class To The Settlement

In evaluating the degree of class members' support for a settlement, courts look to the proportion of the class that formally object to the settlement and the proportion of class members who opt-out. Where relatively few class members opt-out or object to the settlement, the lack of opposition supports court approval of the settlement. *In re Sony SXRD Rear Projection Television Class Action Litig.*, No. 06-Civ-5173, 2008 U.S. Dist. LEXIS 36093, at *18 (S.D.N.Y. May 1, 2008).

This factor weighs heavily in favor of approving the proposed settlement. Class Counsel mailed 86 notices. Not a single Class Member opted out of the action or objected to the settlement. Kirschenbaum Decl. ¶ 7. Therefore, Class Members' satisfaction with the settlement is clear.

### 3)  The Stage Of The Proceedings And The Amount Of Discovery Completed

Courts also consider how far the litigation has progressed and the amount of discovery completed to gauge whether the parties are sufficiently informed to enter into a fair and adequate settlement. *Velez v. Roche*, No. 02-Civ-0337, 2007 U.S. Dist. LEXIS 46223, at *18 (N.D. Cal. June 30, 2004). Parties need not have engaged in extensive discovery for a settlement to be approved. *Maley*, 186 F. Supp. 2d at 363. Instead, courts look at whether "the parties conducted sufficient discovery to understand their claims and negotiate settlement terms." *In re Sony SXRD Rear Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *20.

Class Counsel entered into the proposed Settlement Agreement with a thorough understanding of their case. As set forth above, Defendants provided Class Counsel with all the information necessary to assess total damages in this case. After analyzing that information, Class Counsel were able to obtain a settlement for the Class that was even higher than the calculated damages.

### 4)  The Risks Of Establishing Liability

In evaluating the risks of establishing liability, a court must "assess the risks of litigation against the certainty of recovery offered by the Settlement." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 579. Courts recognize that regardless of the perceived strength of a plaintiff's case, liability is "no sure thing[.]" *Wal-Mart Stores, Inc.*, 396 F.3d at 118 (internal quotation omitted).

This case is relatively low risk for Plaintiffs, in light of Defendants' documents that clearly establish liability. Nevertheless, no matter how strong Plaintiffs' claims are, juries are unpredictable. Moreover, in litigation Defendants would assert legal and factual defenses to Plaintiffs claims. The proposed Settlement is therefore preferable to costly, protracted litigation, which may result in a smaller per-plaintiff recovery.

### 5) The Risks of Establishing Damages

Courts also consider the risks of establishing damages. Regardless of plaintiffs' ability to establish liability, they still face "substantial risks in proving its damages at trial." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 119.

Once again, Plaintiffs are confident that Defendants' documents plainly show the extent of damages in this action. Nevertheless, "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. at 128; *Maley*, 186 F. Supp. 2d at 365 (recognizing that a jury may award plaintiffs only a fraction of their alleged damages). In addition, the Settlement amount exceeds the probable amount of actual damages in this case, so a jury would likely award less than the Settlement amount.

### 6) The Risks Of Maintaining The Class Action Through The Trial

The next *Grinnell* factor is the risk of maintaining the class action through trial. Specifically, courts consider whether a class is already certified, whether plaintiffs will move for class certification, whether defendants will oppose certification, and whether the class could be decertified. *D.S. v. N.Y. City Dep't of Educ.*, No. 05-Civ-4787, 2008 U.S. Dist. LEXIS 96034, at *52 (E.D.N.Y. Nov. 25, 2008); *Glover v. Crestwood Lake Section I Holding Corp.*, No. 89-Civ-

5386, 1991 U.S. Dist. LEXIS 4995, at *17-18 (S.D.N.Y. Apr. 10, 1991).  Courts also consider

the "pressure of active adversarial proceedings on named plaintiffs" and its potential effect on

their ability to represent the class.  *Glover*, 1991 U.S. Dist. LEXIS 4995, at *18.

     If the proposed Settlement Agreement is not approved, Plaintiffs will move for class

certification.  This motion will be time-consuming and costly, and Defendants will likely oppose

it.  Although Plaintiffs believe that the Court would ultimately approve class certification, there

is a possibility that it would not be granted or that the class would later be decertified.

     **7)  The Ability Of Defendants To Withstand A Greater Judgment**

     Next, courts consider a defendant's ability to withstand a judgment greater than the

settlement.  *D.S.*, 2008 U.S. Dist. LEXIS 96084, at *57.  Nevertheless, the fact that a defendant

can withstand a greater judgment does not preclude a finding that the settlement was fair,

reasonable, and adequate.  *Id.*

     Plaintiffs are not fully aware of Defendants' financial condition.  However, Plaintiffs

recognize that the restaurant industry is generally a low-margin industry, especially in light of

current economic conditions in New York City, and that a payout of this size is significant to

Defendants.

     **8)  The Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And The Attendant Risks Of Litigation**

     The final two *Grinnell* factors can be considered together.  *In re Sony SXRD Rear

Projection Television Class Action Litig.*, 2008 U.S. Dist. LEXIS 36093, at *24.  "The most

important factor in the court's assessment of the proposed settlement is the 'strength of the case

for plaintiffs on the merits, balanced against the [relief] offered in settlement.'"  *D.S.*, 2008 U.S.

Dist. LEXIS 96034, at *53 (quoting *Grinnell*, 495 F.2d at 455).

The determination of the "'best possible' recovery necessarily assumes Plaintiffs' success on both liability and damages covering the full Class Period alleged in the Complaint as well as the ability of Defendants to pay the judgment." *Maley*, 186 F. Supp. 2d at 365.

These factors weigh heavily in favor of approval of the Settlement. As stated above, based on Defendants' documents, the damages in this case amount to approximately $48,000. The Settlement amount of $64,000 is therefore 130.61% of Plaintiffs' best possible recovery. By reminding Defendants that they would be subject to fee-shifting if Plaintiffs succeeded at trial, Class Counsel were able to negotiate this extremely favorable settlement for the Class. After attorneys' fees and incentive awards, if approved by this Court, each Class Member will receive over 80% of his or her damages.

### ii. The Notice To Class Members Meets The Requirements Of Rule 23

When a court certifies a class under Rule 23(b)(3),

the court must direct to class numbers the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must concisely and clearly state in plain, easily understood language:
- the nature of the action,
- the definition of the class certified,
- the class claims, issues, or defenses,
- that a class member may enter an appearance through counsel if the member so desires,
- that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
- the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Under Rule 23(c)(2)(B), "the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options

14

that are open to them in connection with the proceedings." *Wal-Mart Stores, Inc.*, 396 F.3d at 114 (internal quotation omitted).

In this case, Class Counsel mailed Class Notice via first class mail to all Settlement Class Members at their last known addresses as maintained by Defendants.[4]  Kirschenbaum Decl. ¶ 6. For each Class Notice returned to Class Counsel as undeliverable, Class Counsel attempted a skip trace.  Class Counsel sent an additional copy of the Class Notice to those individuals who were located using the skip trace.

The Class Notice plainly and concisely provided the necessary information regarding the lawsuit and class certification pursuant to Rule 23(c)(2)(B).  The Notice also described (1) the terms of the settlement; (2) each Class Member's recovery; (3) the relief available to Settlement Class Members; (4) the date, time, and place of the Fairness Hearing; (5) the procedures for objecting to the settlement and appearing at the Fairness Hearing; (6) the incentive awards being sought; (7) the attorneys' fees being sought; and (8) contact information for Class Counsel.

### iii. Incentive Payments Should Be Awarded To The Named Class Representatives And One Additional Class Member

Under the proposed Settlement Agreement, and subject to the Court's approval, a separate $1,000 payment is to be awarded to each of the Class Representatives as well as Class Member Lee Ann Walton.

A court has discretion to grant incentive awards in a class action.  In doing so, a court will consider

> [t]he existence of special circumstances including the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other

---

[4] The Notice is attached hereto as Exhibit B.

15

> burdens sustained by that plaintiff in lending himself or herself to the prosecution
> of the clam, and of course, the ultimate recovery.

*Frank*, 228 F.R.D. at 187 (internal quotation omitted).  Moreover, incentive "awards are particularly appropriate in the employment context. . . . [where] the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers."  *Id.*; *see also Velez*, 2007 U.S. Dist. LEXIS 46223, at *23.

The Class Representatives and Ms. Walton all expended considerable time and effort to assist Class Counsel with the case.  They were instrumental to the initiation and investigation of the case.  Ms. Ganzero, Ms. Hemming, Ms. Johnson, and Ms. Walton spent time reviewing documents, explaining the relevant and necessary factual information to Class Counsel, and evaluating Defendants' defenses.  Kirschenbaum Decl. ¶ 8.  They spent significant time speaking to current and former employees of Defendants about the case and encouraging their participation.  Due to the efforts of these individuals, important evidence and new opt-in members for the class action were acquired.

The incentive payment totaling $4,000 for four plaintiffs is extremely modest in comparison with those approved by other courts, and represents approximately 4.69% of the Settlement Fund.[5]  Because of their time, assistance, development of the case, and subject to – at the very least – fear of retaliation, the payments to the named representatives are appropriate and justified as part of the overall Settlement.

---

[5] *See, e.g., Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *8, 14-15 (awarding incentive payments totaling $16,500, to six plaintiffs); *Frank*, 228 F.R.D. at 187-88 (awarding an incentive payment of $10,523.37 to one individual); *RMED Int'l v. Sloan's Supermarkets*, No. 94-Civ-5587m 2003 U.S. Dist. LEXIS 8239, at *7 (S.D.N.Y. May 15, 2003) (approving an incentive award of $25,000 for a single named plaintiff); *Sheppard v. Consol. Edison Co. of N.Y., Inc.*, No. 94-Civ-0403, 2002 U.S. Dist. LEXIS 16314, at *20 (E.D.N.Y. Aug. 1, 2002) (approving total incentive award of $119,167 for six named plaintiffs).

### iv.  Class Counsel's Attorneys' Fees Should Be Approved

Under the Settlement Agreement (as well as the engagement agreements signed by the named plaintiffs), Class Counsel is permitted to receive approximately one-third of the Settlement Amount as attorneys' fees.  Class Counsel will use the funds awarded as attorneys' fees to cover costs and expenses incurred in the case.

It is well established that "attorneys who create a common fund to be shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work."  *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 585 (internal quotation omitted).  "Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf."  *Id.*  The award of attorneys' fees has the three-fold benefit of (1) "providing just compensation," (2) "encourag[ing] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and (3) "discourag[ing] future misconduct of a similar nature."  *Id.*

The Second Circuit permits a district court to calculate reasonable attorneys' fees by either the lodestar or percentage method.  *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).  Under the lodestar method, "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate."  *Id.* at 47.  Once that calculation is complete, the district court has discretion to "increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys."  *Id.*

Under the percentage method, the district court "sets some percentage of the recovery as a fee.  In determining what percentage to award, courts look to the same 'less objective' factors that are used to determine the multiplier for the lodestar."  *Id.* (internal citation omitted).  Under

either method, the fee must be "reasonable," and "[w]hat constitutes a reasonable fee is properly committed to the sound discretion of the district court." *Id.*

Although both the lodestar and percentage methods are permissible,

> [t]he trend in the Second Circuit recently has been to use the percentage method. The percentage method, though not without flaws, is often preferable to the lodestar method to determine attorneys' fees in class actions because it reduces the incentive for counsel to drag the case out to increase the number of hours billed; also, fewer judicial resources will be spent in evaluating the fairness of the fee petition.

*Hicks*, 2005 U.S. Dist. LEXIS 24890, at *22-23 (internal citation omitted); *see also Wal-Mart Stores, Inc.*, 396 F.3d at 122; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at 586. Moreover, "the percentage method is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients." *Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003).

Nevertheless, even where the percentage method is used, "the lodestar remains useful as a baseline[,]" and the Second Circuit "encourage[s] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50; *EVCI Career Coll. Holding Corp. Sec. Litig.*, No. 05-Civ-10240, 2007 U.S. Dist. LEXIS 57918, at *53 (S.D.N.Y. Feb. 16, 2007).

### a. Class Counsel's Requested Fee Award Is Reasonable

Pursuant to the proposed Settlement Agreement, Class Counsel seeks an award of 33.3% for attorneys' fees and costs. *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (recognizing that the fee agreed upon by lead plaintiffs may "offer the best indication of a market rate"). Class Counsel will pay all incurred costs and expenses from the portion of the fund that it is awarded, and thus will not be seeking a separate award for costs. The percentage

18

of the fund sought is consistent with the norms of class litigation in this circuit. *See*, *e.g.*, *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming district court's award of attorneys' fees and costs equal to 30% of a $42.5 million settlement fund); *Warren v. Xerox Corp.*, 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sept. 19, 2008) (awarding 33.33% of a $12 million settlement fund for fees and costs); *Frank*, 228 F.R.D. at 189 (awarding 40% of a $125,000 settlement fund for fees, costs, and expenses); *Maley*, 186 F. Supp. 2d at 370, 374 (awarding fees of 33 1/3% of the $11.5 million settlement fund and recognizing that courts in the Second Circuit have awarded fees as large as 50% of a settlement fund).[6]

In order to prevent plaintiffs' attorneys from receiving a windfall, "[a]s the size of the settlement fund increases, the percentage of the fund awarded as fees often decreases[.]" *Hicks*, 2005 U.S. Dist. LEXIS, at *25. Unlike a class settlement of hundreds of millions of dollars, a 33.3% award of attorneys' fees in this case would not be a windfall to Class Counsel, particularly since Counsel will pay costs and expenses out of this portion. *Cf. EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *57 (recognizing that it is generally appropriate to award class counsel expenses incurred in the litigation).

Class Counsel invested over $19,000 worth of time in obtaining a fair settlement for the Class. Counsel now seeks 33.3% of the settlement fund, or $21,306, in attorneys' fees. This amounts to a 1.12 multiplier of the lodestar. When the lodestar is used, a multiplier is usually applied that "represents, among other factors, the risk of litigation, the complexity of the issues,

---

[6] *See also*, *e.g.*, *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (awarding fees of 33.33% of the settlement fun ($450,000) plus costs); *In re Bisys Sec. Litig.*, No. 04-Civ-3840, 2007 U.S. Dist. LEXIS 51087, at *10 (S.D.N.Y. July 16, 2007) (awarding fees of 30% of settlement fund ($65,870,000)); *Spann v. AOL Time Warner, Inc.*, No. 02-Civ-8283, 2005 U.S. Dist. LEXIS 10848, at *24 (S.D.N.Y. June 7, 2005) (approving attorneys' fees of 33 1/3% of settlement fund ($2.9 million) plus costs and expenses; *In re Blech Sec. Litig.*, No. 94-Civ-7696, 2002 U.S. Dist. LEXIS 23170, at *5 (S.D.N.Y. Dec. 4, 2002) (approving fees of 33 1/3% of settlement fund ($12 million) plus costs).

the contingent nature of the engagement, and the skill of the attorney." *Taft*, 2007 U.S. Dist.

LEXIS 9144, at *34. In the Second Circuit, courts routinely use lodestar multiples between 3

and 5. *Wal-Mart Stores, Inc.*, 396 F.3d at 123; *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d at

590; *EVCI Career Coll. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 7918, at *56 n.7. The

multiplier of 1.08 that Class Counsel seek is therefore extremely modest.

### b. The *Goldberger* Factors

Whether the percentage or lodestar method is used, courts consider the six factors set

forth by the Second Circuit in *Goldberger v. Integrated Resources, Inc.*: "(1) the time and labor

expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the

litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement;

and (6) public policy considerations." 209 F.3d at 50 (internal quotation omitted; alteration in

original).

### 1) Counsel's Time And Labor

The first factor requires an examination of the time and labor expended by counsel in

achieving the settlement. In this case, Class Counsel interviewed Plaintiffs and several Class

Members, analyzed extensive wage and payroll records to determine the extent of damages, and

engaged in detailed conversations with Defense Counsel about the substance and value of the

case. Kirschenbaum Decl. ¶¶ 2-5, 8. In their representation of the class, Class Counsel

expended over 52 attorney hours and 14 paralegal hours. *Id*. ¶ 22. Class Counsel also have

ongoing duties in administering the settlement, which will require additional professional time.

Class Counsel have kept expenses and attorney hours relatively low by litigating this action in an

efficient and cost effective manger. Class Counsel worked to limit the duplication of effort and

assigned work to the lowest billing timekeepers (often paralegals) when possible. *See In re*

*Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 3004) (supporting counsel's efforts to "minimize unnecessary duplication of work").

### 2) The Litigation's Magnitude And Complexity

There is an inherent complexity in pursuing any class action, and Plaintiffs insisted on bringing this action on behalf of the class instead of merely on their own behalf. Class Counsel engaged in discovery, consulted with Plaintiffs, and attended a Rule 26 hearing before the Court. Nevertheless, Class Counsel concede that this case was not at complex as many other wage and hour class actions. However, that is the reason they were able to get an excellent result for the Class quickly and why they are seeking a low fee.

### 3) The Risks Of Litigation

"Courts of this Circuit have recognized the risk of litigation to be perhaps the foremost factor to be considered in determining the award of appropriate attorneys' fees." *Taft*, 2007 U.S. Dist. LEXIS, at *30 (internal quotation omitted); *see also In re Global Crossing*, 225 F.R.D. at 467 (noting that "[t]he contingent nature of . . . Lead Counsel's representation is a key factor in determining a reasonable award of attorneys' fees"). Class Counsel took this case pursuant to retainer agreements with the named Plaintiffs which stated that Counsel would receive one third of the recovery *only if* Plaintiffs obtained a recovery. Had Plaintiffs not obtained a recovery, Counsel would have received no payment for their work.

The documents produced by Defendants showed the extent of damages in this case. Once Class Counsel analyzed these documents, it was evident that the case was relatively low risk for the Plaintiffs to the extent they sought damages equal to those established by the documents. Nevertheless, Class Counsel was still able to negotiate a substantially higher settlement amount than the documents supported.

Moreover, "this is not a case where plaintiffs' counsel can be cast as jackals to the government's lion, arriving on the scene after some enforcement or administrative agency has made the kill." *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 142 F.R.D. 588, 597 (S.D.N.Y. 1992). There was no governmental investigation or prosecution of this matter. *See In re Priceline.com, Inc. Sec. Litig.*, No. 00-Civ-1884, 2007 U.S. Dist. LEXIS 52538, at *18 (D. Conn. July 19, 2007) (noting that the absence of government prosecution increases the risk of litigation).

### 4) Quality Of The Representation

Class Counsel have extensive experience representing workers in wage-hour class actions and civil rights actions. Kirschenbaum Decl. ¶¶ 9-18; *see also*, *e.g.*, *Agofonova v. Nobu Corp.*, No. 07-Civ-6926 (S.D.N.Y. Feb. 6, 2009) (granting final approval of settlement and certification of settlement class in wage and hour class action); *Williams v. Twenty Ones, Inc.*, No. 07-Civ-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008) (conditionally certifying FLSA collective action of restaurant/club workers); *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317 (S.D.N.Y. Oct. 5, 2007) (conditionally certifying FLSA collective action of restaurant workers). Class Counsel used their experience to obtain an excellent result for the class. *See In re Priceline.com*, 2007 U.S. Dist. LEXIS 52538, at *15 ("The quality of representation here is demonstrated, in part, by the result achieved for the class."). Based on prior interactions with Class Counsel in other cases, Defendants and Defense Counsel knew that Class Counsel would pursue this matter diligently and with considerable skill and expertise.

"The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work." *In re Global Crossing*, 225 F.R.D. at 467 (internal quotation omitted). Defendants are represented by Kenneth Kirschner, an experienced employment litigator and an

expert in wage and hour law.[7]  Mr. Kirschner is currently a partner in Hogan & Hartson's Labor and Employment practice.

### 5)  The Fee Is Reasonable In Relation To The Settlement

A fee equal to "one-third of the common fund after deduction of legal costs . . . is consistent with the norms of class litigation in this circuit."  *Gilliam*, 2008 U.S. Dist. LEXIS 23016, at *15 (wage and hour settlement).  While this percentage could constitute a "windfall" in cases involving large settlement funds, the $64,000 fund in this case "does not create such an issue."  *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32 ($15.175 million settlement fund); *see also In re Greenwich Pharm. Sec. Litig.*, No. 92-Civ.-3071, 1995 U.S. Dist. LEXIS 5717, at *19 (E.D. Pa. Apr. 27, 1995) ("[A] fee award of 33 percent [of $4.3 million settlement] does not present the danger of providing plaintiffs' counsel with the windfall that would accompany a 'megafund' of, for example, $100 million.").

### 6)  Public Policy Considerations

Both the FLSA and New York Labor Law are remedial statutes designed to protect employees from unfair labor practices.  29 U.S.C. § 202(a); N.Y. Lab. Law § 650.  A fair attorneys' fee award that takes into account the services provided and the risks undertaken furthers these remedial purposes.  *Maley*, 186 F. Supp. 2d at 374; *cf. Hicks*, 2005 U.S. Dist. LEXIS 24890, at *26.  Moreover, given the relatively small recoveries of individual class members, it is unlikely that "without the benefit of class representation[] they would be willing to incur the financial costs and hardships of separate litigations."  *Frank*, 228 F.R.D. at 181. "[I]f this Court denied an award of fees sufficient to compensate counsel for at least a substantial portion of the work it has performed, no attorney . . . would likely be willing to take on future

---

[7] *See* http://www.hhlaw.com/kkirschner/.

small-scale class actions such as this." *Id.* at 189 (approving attorneys' fees of approximately 40% of a $125,000 settlement fund).

### IV.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court (1) grant final approval of the class action settlement; (2) certify the settlement class; (3) award Class Counsel attorneys' fees; and (4) approve the enhancement awards requested.

Respectfully submitted,

Dated: New York, New York                JOSEPH & HERZFELD LLP
      February 18, 2009

/s/ D. Maimon Kirschenbaum_____

D. Maimon Kirschenbaum (DK-2338)
Charles E. Joseph (CJ-9442)
Michael D. Palmer (MP-5090)
757 Third Avenue, 25th Floor
New York, NY 10017
Tel: (212) 688-5640
Fax: (212) 688-2548

*Attorneys for Settlement Class*